# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| IN RE GLOBAL CASH ACCESS HOLDINGS, INC. SECURITIES LITIGATION | Case No.: 2:08-CV-01320-JCM-PAL |

## STIPULATION AND AGREEMENT OF SETTLEMENT

This Stipulation and Agreement of Settlement ("Settlement Agreement"), dated as of February 17, 2010, is entered into by and among Lead Plaintiff City of Richmond Retirement System ("Lead Plaintiff"), on behalf itself and the Class (as defined herein), and defendants Global Cash Access Holdings, Inc., Kirk Sanford, Harry C. Hagerty, III, Walter G. Kortschak, Charles J. Fitzgerald, E. Miles Kilburn, William H. Harris, Karim Maskatiya, Robert Cucinotta, Summit Partners L.P., M&C International, Deloitte & Touche LLP, Goldman, Sachs & Co., J.P. Morgan Securities Inc., JPMorgan Chase & Co., Banc of America Securities LLC, Citigroup Global Markets Inc., Cowen and Company, LLC, Deutsche Bank Securities Inc., and Wachovia Capital Markets, LLC (collectively, "Defendants"), by and through their undersigned attorneys of record, subject to approval of the United States District Court for the District of Nevada (the "Court") pursuant to Rule 23 of the Federal Rules of Civil Procedure.

**WHEREAS:**

A.     All capitalized words or terms not otherwise defined herein shall have the meaning set forth in Section 1 below, entitled "Definitions."

B.     By Order dated June 26, 2008, the City of Richmond Retirement System was appointed by the Honorable Shirley Wohl Kram to serve as Lead Plaintiff on behalf of the Class

in *In re Global Cash Access Holdings, Inc.*, No. 08-CV-3516 (SWK) (S.D.N.Y.) (the "New York Action").

C.      On August 18, 2008, Lead Plaintiff filed a Consolidated Class Action Complaint ("CCAC") in the New York Action that, *inter alia*, named the Defendants as defendants and asserted claims against each pursuant to the Securities Act of 1933;

D.      By Order dated September 18, 2008, the Honorable Shirley Wohl Kram transferred the New York Action to the United States District Court for the District of Nevada, where it proceeded under the caption *In re Global Cash Access Holdings, Inc. Securities Litigation*, Case No. 2:08-CV-01320-JCM-PAL (D. Nev.), with the CCAC serving as the operative complaint;

E.      Each of the Defendants moved to dismiss the CCAC, but those motions were denied by Order dated June 29, 2009;

F.      The parties thereafter commenced discovery, which included the exchange of initial disclosures, interrogatories, and requests for production of documents, and responses thereto, including the production of a substantial volume of documents;

G.      On December 16, 2009, the parties' counsel participated in mediation in an effort to determine whether a consensual resolution of the Action could be achieved prior to the expenditure of additional time and expense on the litigation, including numerous depositions which had been noticed and were in the process of being scheduled to take place during January and February 2010; and

H.      No settlement was reached at the mediation, but the parties' counsel thereafter continued to engage in arms'-length negotiations with the assistance of the mediator, and reached

2

an agreement-in-principle on December 23, 2009 to settle the Action on terms that include the payment of a total of $5,875,000 in cash to the Class, as set forth below; and

     I.     At the time the settlement was reached, no Class had been certified in the Securities Action, but Lead Plaintiff's motion for certification of the Class was pending.

**NOW, THEREFORE**, in consideration of the mutual terms, conditions, releases covenants and agreements set forth in this Settlement Agreement, Lead Plaintiff (on behalf of itself and the Class) and the Defendants hereby agree on the following terms:

**1.**     <u>**Definitions**</u>

     As used in this Settlement Agreement, the following terms have the meanings specified below:

     1.1     "Action" shall mean *In re Global Cash Access Holdings, Inc. Securities Litigation,* 2:08-CV-01320-JCM-PAL, currently pending in the United States District Court for the District of Nevada.

     1.2     "Authorized Claimant" means a Class member who submits a timely and valid Proof of Claim form to the Claims Administrator.

     1.3     "Claims Administrator" means the firm of Analytics Inc., which shall administer the Settlement.

     1.4     "Class" shall mean all persons and entities who purchased or otherwise acquired Global Cash Access Holdings, Inc. ("GCAH") common stock from September 22, 2005 through November 14, 2007, inclusive (the "Class Period"). Excluded from the Class are (1) the Defendants; (2) members of the immediate family of each of the Defendants; (3) the subsidiaries and affiliates of GCAH; (4) any person or entity who is, or was during the Class Period, a partner, officer, executive, employee or director of GCAH, or a partner, officer, executive, or

director of any of the other Defendants; (5) any entity in which any such excluded person or entity has a majority interest; (6) the legal representatives, heirs, successors or assigns of any of the excluded persons or entities specified in this paragraph; and (7) the insurance carriers who provide directors' and officers' liability insurance to GCAH and/or any of the Defendants related to the claims in this Action. Also excluded from the Class are any putative Class members who exclude themselves by filing a timely and valid request for exclusion in accordance with the requirements set forth in the Class Notice.

   1.5 "Class Counsel" shall mean Grant & Eisenhofer P.A.

   1.6 "Class Notice" shall mean a notice of the proposed Settlement to be provided to members of the Class, substantially in the form attached as Exhibit 1 to Exhibit A hereto.

   1.7 "Court" shall mean the United States District Court for the District of Nevada.

   1.8 "GCAH Defendants" shall mean Global Cash Access Holdings, Inc., Kirk Sanford, Harry C. Hagerty, III, Walter G. Kortschak, Charles J. Fitzgerald, E. Miles Kilburn, William H. Harris, Karim Maskatiya, Robert Cucinotta, Summit Partners L.P., and M&C International.

   1.9 "Underwriter Defendants" shall mean Goldman, Sachs & Co., J.P. Morgan Securities Inc., JPMorgan Chase & Co., Banc of America Securities LLC, Citigroup Global Markets Inc., Cowen and Company, LLC, Deutsche Bank Securities Inc., and Wachovia Capital Markets, LLC.

   1.10 "Deloitte" shall mean Deloitte & Touche LLP.

   1.11 "Defendants" shall mean the GCAH Defendants, the Underwriter Defendants, and Deloitte.

   1.12 "Defendants' Counsel" shall mean Morrison & Foerster LLP; Paul, Weiss, Rifkind, Wharton & Garrison LLP; Patton Boggs LLP; and Gibson, Dunn & Crutcher LLP.

1.13 "Escrow Agent" shall mean Grant & Eisenhofer P.A.

1.14 "Final" shall mean that the period for any appeals or petitions for certiorari ("Appeal Proceeding") has expired without the initiation of an Appeal Proceeding, or, if an Appeal Proceeding has been timely initiated, that there has occurred a full and final disposition of any such Appeal Proceeding without a reversal or any material modification, including the exhaustion of proceedings in any remand and/or subsequent appeal after remand. Notwithstanding any other provision herein, the Final Order and Judgment (defined herein) shall be deemed Final at the time set forth in the preceding sentence even if, at that time, (i) the Court has not yet entered an order regarding the Plan of Allocation or the award of legal fees and expenses to Class Counsel, (ii) an order regarding the Plan of Allocation or the award of legal fees and expenses to Class Counsel has been entered but has not yet become Final, or (iii) an order regarding the Plan of Allocation or the award of legal fees and expenses to Class Counsel has been entered but is modified following an Appeal Proceeding.

1.15 "Final Order and Judgment" shall mean the order of the Court, a proposed form of which is attached hereto as Exhibit B, that shall certify the Class for purposes of this Settlement only; appoint Lead Plaintiff as the Class representative for purposes of the Settlement only; approve the Settlement on the terms set forth in this Settlement Agreement, without material modification; and dismiss the Action as to all claims and as to all Defendants, with prejudice.

1.16 "Lead Plaintiff" shall mean the City of Richmond Retirement System.

1.17 "Material modification" shall mean a change to the terms of the Settlement that materially affects the agreement of the parties, including particularly material changes to the parties participating in the Settlement (including the definition of the Class), the scope of the releases, the entry of a final judgment, or the amount paid as set forth in Section 2.1. A

modification to the Plan of Allocation, the amount of attorneys' fees, costs, or expenses awarded by the Court, or the details for notice, administration of claims, or timing for payments made from the Settlement Fund shall not be material modifications to the Settlement.

1.18  "Memorandum of Understanding" shall mean the Memorandum of Understanding executed by the Settling Parties on January 25, 2010.

1.19  "Plan of Allocation" shall mean the plan approved by the Court for allocating the proceeds of the Settlement Fund among members of the Class.

1.20  "Preliminary Approval Order" shall mean an order, the proposed form of which is attached hereto as Exhibit A, preliminarily approving the Settlement and certifying the Class for purposes of the Settlement, and approving the Class Notice and a plan for distributing the Class Notice.

1.21  "Proof of Claim" shall mean the document provided to members of the Class, substantially in the form attached as Exhibit 2 to Exhibit A hereto, which must be submitted by Class members along with such supporting documents as are designated therein, including proof of the transactions claimed and the losses incurred thereon (or such documents or proof as the Claims Administrator in its discretion may deem acceptable), in order to establish their eligibility to participate in the distribution of the Settlement Fund.

1.22  "Released Claims" shall mean all claims, known or unknown (including unknown claims as set forth below in Section  2.3.1), by Lead Plaintiff or any other member of the Class, against any of the Released Defendant Parties (defined herein), that (i) were or could have been asserted in the Action; (ii) arise in connection with the purchase, acquisition, or holding of GCAH common stock during the Class Period; or (iii) relate to the subject matter of the Action and/or the allegations of the Consolidated Class Action Complaint filed on August 18, 2008 and

relate to the claimant's ownership of or transactions in GCAH common stock during the Class Period (except for claims to enforce the terms and conditions of the Settlement Agreement). For the avoidance of doubt, the term "Released Claims" does not include claims that were brought in the consolidated shareholder derivative cases entitled *In re Global Cash Access Holdings Inc. Derivative Litigation*, Case No. 2:07-cv-01659-JCM-PAL, which were resolved by Court order on May 19, 2009 or direct or derivative claims brought by or on behalf of GCAH.

1.23 "Released Defendants' Claims" shall mean any and all claims, known or unknown (including unknown claims as set forth below in Section 2.4.1), by any of the Defendants against any of the Released Plaintiff Parties (as defined herein) which arise from the institution, prosecution, or settlement of the Action (except for claims to enforce the terms and conditions of the Settlement Agreement)..

1.24 "Released Plaintiff Parties" shall mean Lead Plaintiff and Robert Lowinger, and each of their past or present parents, subsidiaries, affiliates, investment funds, predecessors, successors, agents, advisors, insurers, attorneys, and their respective past, present, or future officers, directors, partners, members, managing directors, principals and employees.

1.25 "Released Defendant Parties" shall mean Defendants and each of their past or present parents, subsidiaries, affiliates, investment funds, predecessors, successors, agents, advisors, insurers, attorneys, and their respective past, present or future officers, directors, partners, members, managing directors, principals and employees, as well as subcontractors of Deloitte.

1.26 "Settlement" shall mean the settlement to be consummated under this Settlement Agreement pursuant to the Final Order and Judgment.

1.27 "Settlement Amount" shall mean $5,875,000.00, to be paid according to the provisions of Sections 2.1 and 2.2 below.

1.28 "Settlement Fund" shall mean the principal amount of the Settlement Amount plus any accrued interest.

1.29 "Settlement Fund Account" shall mean the account that the Escrow Agent shall establish at a federally insured financial institution and into which the Settlement Amount shall be deposited.

1.30 "Settling Parties" shall mean (i) Lead Plaintiff, on behalf of itself and the Class, and (ii) Defendants.

1.31 "Summary Notice" shall mean the summary notice of proposed Settlement and hearing for publication, substantially in the form attached as Exhibit 3 to Exhibit A hereto.

1.32 "Supplemental Agreement" shall mean the Supplemental Agreement entered into by the Settling Parties on January 25, 2010 in connection with the execution of the Memorandum of Understanding.

2.        **Consideration and Releases**

2.1    In full settlement of all Released Claims by Lead Plaintiff and the Class and in consideration of the releases described in Section 2.3 below:

a.    The GCAH Defendants agree to cause GCAH's insurance carrier to pay the sum of $5,000,000 in cash for the benefit of the Class (the "GCAH Payment").

b.    Deloitte agrees to pay the sum of $875,000 in cash for the benefit of the Class (the "Deloitte Payment").

2.2    Within 30 calendar days after the Court enters the Preliminary Approval Order, Deloitte shall pay the Deloitte Payment and the GCAH Defendants shall cause GCAH's insurer

to pay the GCAH Payment to the Settlement Fund Account, as directed by Class Counsel. Upon payment of the amounts stated in paragraph 2.1, Defendants shall have no further liability for payment of any amounts in this Action, including for the payment of plaintiff's attorneys' fees, costs and expenses or the costs and expenses to administer the Settlement.

    2.3    Effective upon the Final Order and Judgment becoming Final, Lead Plaintiff and the Class shall and by operation of the Final Order and Judgment shall be deemed to fully, finally and forever release the Released Defendant Parties from the Released Claims, and Lead Plaintiff and all Class members shall be forever barred and enjoined from commencing, instituting or maintaining any Released Claims against any Released Defendant Parties.

    2.3.1    Lead Plaintiff acknowledges for itself and on behalf of the Class members that the claims being released pursuant to Section 2.3 may include claims, rights, causes of actions or suits that are not known or suspected to exist, but that otherwise fit the definition of Released Claims. These unknown claims are nonetheless being released, and Lead Plaintiff, on its own behalf and on behalf of the Class, hereby waives the rights provided in California Civil Code Section 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Lead Plaintiff, on its own behalf and on behalf of the Class, waives the rights provided by this and any similar statute or common law principle in California or other jurisdictions. Lead Plaintiff, on its own behalf and on behalf of the Class, acknowledges that the inclusion of these unknown claims in the definitions of Released Claims was separately bargained for and was a key element of the Settlement.

9

2.4     Effective upon the Final Order and Judgment becoming Final, Defendants shall and by operation of the Final Order and Judgment shall be deemed to fully, finally, and forever release the Released Plaintiff Parties from the Released Defendants' Claims, and Defendants shall be forever barred and enjoined from commencing, instituting or maintaining any Released Defendants' Claims against any Released Plaintiff Parties.

2.4.1   Defendants acknowledge that the claims being released pursuant to Section 2.4 may include claims, rights, causes of action or suits that are not known or suspected to exist that arise from the institution, prosecution, or settlement of the Action. These claims are nonetheless being released, and Defendants hereby waive the rights provided in California Civil Code Section 1542, which provides:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

Defendants waive the rights provided by this and any similar statute or common law principle in California or other jurisdictions. Defendants acknowledge that the inclusion of these unknown claims in the definitions of Released Defendants' Claims was separately bargained for and was a key element of the Settlement.

**3.      Approval of the Settlement by the Court**

3.1     The Settlement is subject to Court approval. The Settling Parties shall cooperate in good faith, including by taking all steps and efforts contemplated by this Settlement Agreement and any other steps or efforts which may become necessary by order of the Court (unless such order materially modifies the terms of this Settlement Agreement), to obtain Court approval of the Settlement and to carry out its terms, including the following:

3.1.1 As soon as reasonably practicable after execution of this Settlement Agreement, the Settling Parties shall submit this Settlement to the Court for preliminary approval. The Settling Parties shall in good faith take reasonably prompt steps to secure expeditious entry of the Preliminary Approval Order, in the form attached hereto as Exhibit A, and request that the Court schedule a prompt fairness hearing.

3.1.2 On the date and in the manner set by the Court in its Preliminary Approval Order, Lead Plaintiff shall cause the Class Notice to be transmitted in the form and manner approved by the Court, and shall cause the Summary Notice to be published in the form and manner approved by the Court.

4.        **Settlement Administration and Distribution**

4.1       The Escrow Agent shall establish at a federally-insured financial institution ("Financial Institution") the Settlement Fund Account which shall be considered a common fund created in connection with the Action. The Escrow Agent may retain up to $250,000 of the Settlement Fund in cash in the Settlement Fund Account for the purpose of paying Taxes and other expenses associated with the administration of the Settlement, and shall invest all other funds held in escrow in the Settlement Fund Account only in United States Treasury securities and/or securities of United States agencies backed by the full faith and credit of the United States Treasury, or mutual funds or money market accounts that invest exclusively in the foregoing securities. All funds held by the Escrow Agent in the Settlement Fund Account pursuant to this Settlement Agreement shall be deemed and considered to be in the legal custody of the Court until such time as such funds shall be distributed pursuant to further order(s) of the Court or pursuant to the terms of this Settlement.

4.2     The monies in the Settlement Fund Account shall be used (i) to pay any Taxes, as defined in Section 4.4 below, (ii) to pay any Notice and Administration Costs, as defined in Section 4.5 below, and (ii) to pay any attorneys' fees and expenses awarded by the Court, as referred to in Sections 5.1 and 5.2 below.  The balance in the Settlement Fund Account after payment of the foregoing shall be the "Net Settlement Fund."  The Net Settlement Fund shall be distributed to the Authorized Claimants in accordance with the Class Distribution Order, as provided in Sections 4.10 through 4.17 below.  Lead Plaintiff, its attorneys and the Class shall look solely to the Settlement Fund for payment of their fees, costs and expenses and the fees, costs and expenses to administer the Settlement.

4.3     The Settling Parties agree that the Settlement Fund Account is intended to be a Qualified Settlement Fund within the meaning of Treasury Regulation §1.468B-1 and that Class Counsel shall be the "administrator" of the Settlement Fund Account within the meaning of Treasury Regulation §1.468B-2(k)(3), and shall be responsible for filing tax returns for the Settlement Fund Account and paying from the Settlement Fund Account any Taxes owed with respect to the Settlement Fund Account.  The parties hereto agree that the Settlement Fund Account shall be treated as a Qualified Settlement Fund from the earliest date possible, and agree to any relation-back election required to treat the Settlement Fund Account as a Qualified Settlement Fund from the earliest date possible.  Counsel for the GCAH Defendants and for Deloitte agree to provide promptly to Class Counsel the required statement described in Treasury Regulation § 1.468B-3(e).

4.4     All (i) taxes on the income of the Settlement Fund Account and (ii) expenses and costs incurred in connection with the taxation of the Settlement Fund Account (including, without limitation, expenses of tax attorneys and accountants) (collectively "Taxes") shall be

paid out of the Settlement Fund Account, shall be considered to be a cost of administration of the Settlement and shall be timely paid by the Escrow Agent without prior order of the Court.

4.5     The Escrow Agent may direct the Financial Institution in writing to disburse from the Settlement Fund Account, without further approval from the Defendants or the Court, amounts for the payment of the reasonable costs and expenses associated with the administration of the Settlement, including, without limitations, the actual costs of identifying members of the Class, printing and mailing the Class Notice and Proof of Claim, publication of the Summary Notice, reimbursements to nominee owners for forwarding the Class Notice and Proof of Claim to their beneficial owners, and the administrative expenses incurred and fees charged by the Claims Administrator in connection with providing notice and processing the submitted claims (collectively, "Notice and Administration Costs"). If the Settlement Agreement is terminated for any reason, or the Final Order and Judgment is not approved or entered or does not become Final, the Escrow Agent shall return all monies paid into the Settlement Fund Account to the persons who paid them, as set forth in Section 9.3 below, except that the Escrow Agent shall have no obligation to return amounts actually incurred for Notice and Administration Costs, up to $250,000.

4.6     The Claims Administrator shall administer the Settlement under Class Counsel's supervision and subject to the jurisdiction of the Court. Defendants shall have no role or responsibility for the administration of the Settlement and shall have no liability to the Class in connection with such administration. GCAH and its counsel shall cooperate in the administration of the Settlement to the extent reasonably necessary to effectuate its terms, including undertaking reasonable efforts to cooperate in the production of information with respect to the identification of Class members from GCAH's shareholder transfer records.

4.7     Class Counsel shall propose to the Court, and the Court shall approve in its discretion, a Plan of Allocation that shall provide for the allocation of the Settlement Fund among Lead Plaintiff and other members of the Class.  The Plan of Allocation is a matter separate and apart from the proposed Settlement and any decision by the Court concerning the Plan of Allocation shall not affect the validity or finality of the proposed Settlement.  It is not a condition of this Settlement Agreement that any particular Plan of Allocation be approved.

4.8     This is not a claims-made settlement.  After the Settlement is approved by the Court and the Final Order and Judgment becomes Final, neither the Defendants nor any person or entity paying settlement consideration on behalf of any Defendant shall have the right to recover any of the consideration paid.

4.9     Class Counsel and the Claims Administrator shall take all reasonable steps and use their best efforts to identify and provide Notice and a Proof of Claim form to the members of the Class, including beneficial owners whose GCAH common stock was held of record by banks, brokerage firms or other nominees, as provided in the Preliminary Approval Order.  Any member of the Class who does not submit a timely and valid Proof of Claim will not be entitled to receive any of the proceeds from the Net Settlement Fund but will otherwise be bound by all of the terms of this Settlement Agreement and the Settlement, including the terms of the Final Order and Judgment to be entered in the Action and the releases provided for herein, and will be barred from bringing any action against the Released Defendant Parties asserting any Released Claims.

4.10    Class Counsel will apply to the Court, on notice to Defendants' Counsel, for an order (the "Class Distribution Order") approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Proofs of Claim submitted,

14

approving payment of any Notice and Administration Costs not previously applied for, and directing payment of the Net Settlement Fund to Authorized Claimants.

4.11    The Claims Administrator shall process the Proofs of Claim and, after entry of the Class Distribution Order, distribute the Net Settlement Fund to the Authorized Claimants. Class Counsel shall have the right, but not the obligation, to advise the Claims Administrator to waive what Class Counsel deems to be formal or technical defects in any Proofs of Claim submitted in the interests of achieving substantial justice. Defendants shall have no involvement in reviewing or challenging Proofs of Claim. Except for the obligations to pay the Settlement Amount and to exercise reasonable efforts to cooperate in the production of information to identify the Class members as set forth in paragraph 4.6, Defendants shall have no liability, obligation or responsibility for the administration of the Settlement or disbursement of the Net Settlement Fund.

4.12    For purposes of determining the extent, if any, to which a Class member shall be entitled to be treated as an Authorized Claimant, the following conditions shall apply:

4.12.1 Each Class member seeking to receive a payment from the Net Settlement Fund shall be required to submit a Proof of Claim supported by such documents as are designated therein, including proof of the transactions claimed and the losses incurred thereon, or such other documents or proof as the Claims Administrator, in its discretion, may deem acceptable;

4.12.2 All Proofs of Claim must be submitted by the date specified in the Class Notice, unless such period is extended by Order of the Court. Any Class member who fails to submit a Proof of Claim by such date shall be forever barred from receiving any payment pursuant to this Settlement (unless, by Order of the Court, a later submitted

Proof of Claim by such Class member is approved), but shall in all other respects be bound by all of the terms of this Settlement, including the terms of the Final Order and Judgment to be entered in the Action and the releases provided for herein, and will be barred from bringing any action against the Released Defendant Parties asserting any Released Claims. Provided that it is received before the motion for the Class Distribution Order is filed, a Proof of Claim shall be deemed to have been submitted when posted, if received with a postmark indicated on the envelope and if mailed by first-class mail and addressed in accordance with the instructions thereon. In all other cases, the Proof of Claim shall be deemed to have been submitted when actually received by the Claims Administrator;

4.12.3 Each Proof of Claim shall be submitted to and reviewed by the Claims Administrator, who shall determine in accordance with this Settlement and the approved Plan of Allocation the extent, if any, to which each claim shall be allowed, subject to review by the Court pursuant to Section 4.12.5 below;

4.12.4 Proofs of Claim that do not meet the submission requirements may be rejected. Prior to rejection of a Proof of Claim, the Claims Administrator shall communicate with the claimant in order to attempt to remedy the curable deficiencies in the Proof of Claim submitted. The Claims Administrator shall notify, in a timely fashion and in writing, each claimant whose Proof of Claim it proposes to reject in whole or in part, setting forth the reasons therefor, and shall indicate in such notice that the claimant whose claim is to be rejected has the right to a review by the Court if the claimant so desires and complies with the requirements of Section 4.12.5 below;

4.12.5  If any claimant whose claim has been rejected in whole or in part desires to contest such rejection, the claimant must, within twenty (20) days after the date of mailing of the notice required in Section 4.12.4 above, serve upon the Claims Administrator a notice and statement of reasons indicating the claimant's grounds for contesting the rejection along with any supporting documentation, and requesting a review thereof by the Court.  If a dispute concerning a claim cannot be otherwise resolved, the Claims Administrator will notify Class Counsel and, upon receipt of notification, Class Counsel will present the request for review to the Court; and

4.12.6  The administrative determinations of the Claims Administrator accepting and rejecting claims shall be presented to the Court, on notice to Defendants' Counsel, for approval by the Court in the Class Distribution Order.

4.13     Each claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the claimant's claim, and the claim will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that claimant's status as a Class member and the validity and amount of the claimant's claim.  No discovery shall be allowed on the merits of the Action or Settlement in connection with processing of the Proofs of Claim.

4.14     Payment pursuant to this Settlement shall be deemed final and conclusive against all Class members.  All Class members whose claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund, but otherwise shall be bound by all of the terms of this Settlement Agreement and the Settlement, including the terms of the Final Order and Judgment to be entered in the Action and the releases provided for herein,

and will be barred from bringing any action against the Released Defendant Parties asserting any Released Claims.

4.15    All proceedings with respect to the administration, processing and determination of claims described by Section 4.12 of this Settlement Agreement and the determination of all controversies relating thereto, including disputed questions of law and fact with respect to the validity of claims, shall be subject to the jurisdiction of the Court.

4.16    The Net Settlement Fund shall be distributed to Authorized Claimants by the Claims Administrator only after the Final Order and Judgment is Final and after: (i) all Proofs of Claim have been processed, and all claimants whose Proofs of Claim have been rejected or disallowed, in whole or in part, have been notified and provided the opportunity to be heard concerning such rejection or disallowance; (ii) all objections with respect to all rejected or disallowed Proofs of Claim have been resolved by the Court, and such resolutions have become Final; (iii) all matters with respect to attorneys' fees, costs, and disbursements have been resolved by the Court, and such resolutions have become Final; and (iv) all costs of administration have been paid.

4.17    If any funds remain in the Settlement Fund Account by reason of un-cashed distributions or otherwise, then, one year after the initial distribution and after the Claims Administrator has made reasonable and diligent efforts to have Class members who are entitled to participate in the distribution cash their distributions, any balance remaining from the Net Settlement Amount shall be re-distributed to Authorized Claimants who have cashed their initial distributions and who would receive at least $10.00 from such re-distribution, after payment of any unpaid costs or fees incurred in administering the Settlement for such re-distribution. If, six months after such re-distribution, any funds shall remain in the Settlement Fund Account, then

such balance shall be contributed to a non-sectarian, not-for-profit 501(c)(3) organization(s) designated by Class Counsel.

4.18    The Defendants and insurers shall not have any responsibility for, interest in, or liability whatsoever with respect to the investment, administration or distribution of the Settlement Fund, the determination or administration of taxes, or any losses incurred in connection therewith.    No Person shall have any claim of any kind against Defendants, Defendants' Counsel, or director and officer liability insurers and reinsurers with respect to the matters set forth in this paragraph; and Lead Plaintiff, the Class and Class Counsel release Defendants, and Defendants' Counsel from any and all liability and claims arising from or with respect to the investment or distribution of the Settlement Fund.

5.    **Attorneys' Fees and Expenses**

5.1    Class Counsel may apply to the Court for an award from the Settlement Fund of attorneys' fees, costs and expenses.   Immediately upon an award of attorneys' fees and expenses by the Court or entry of the Final Order and Judgment (whichever comes later), Class Counsel shall receive payment of such award from the Settlement Fund, notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof, subject to the obligation of Class Counsel to refund to the Settlement Fund, within ten (10) days notice in writing from the Defendants, the amount received plus accrued interest at the rate paid on the Settlement Fund Account by the Financial Institution, if and when, (i) as a result of any appeal and/or further proceeding on remand, or successful collateral attack, the fee or expense award is modified, reduced or reversed, (ii) the Settlement is terminated by any party as provided herein or in the Supplemental Agreement, or (iii) the Settlement or the Final Order and Judgment otherwise does not become Final.   Class

Counsel may, in its discretion, allocate a portion of any award of attorneys' fees and expenses to the counsel for the plaintiff who initiated the New York Action, provided that such allocation shall not affect Class Counsel's obligation to refund the full amount received, in the event described in the immediately preceding sentence.

5.2     Lead Plaintiff may apply to the Court for an award from the Settlement Fund, pursuant to the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(a)(4), for reimbursement of costs and expenses incurred in representing the Class.

5.3     Court approval of the payment of attorneys' fees, costs, or expenses to counsel for Lead Plaintiff shall not be a condition of the Settlement and the Settlement shall be valid and final regardless of the amount approved by the Court.

5.4     Defendants shall take no position on any request for attorneys' fees, costs or expenses by Lead Plaintiff or Class Counsel.

5.5     Except as otherwise ordered by the Court in connection with the provisions of Sections 5.1 and 5.2, the Settling Parties each agree to bear their own attorneys' fees and costs incurred in connection with the Action. Lead Plaintiff and Class Counsel shall look solely to the Settlement Fund for payment of their fees, costs and expenses and the fees, costs and expenses to administer the Settlement.

**6.          Representations and Warranties**

6.1     Lead Plaintiff and Defendants represent and warrant that they have engaged in discovery pursuant to the Court's orders; that they are voluntarily entering into this Settlement Agreement as a result of arm's-length negotiations between their counsel, with the assistance of an experienced mediator; and that in executing this Settlement Agreement they are relying solely upon their own judgment, belief and knowledge, and the advice and recommendations of

their own respective counsel, concerning the nature, extent and duration of their rights and claims hereunder and regarding all matters which relate in any way to the subject matter hereof. Each party to this Settlement Agreement assumes the risk of mistake as to facts or law.

6.2.     Each person executing this Settlement Agreement on behalf of any other person does hereby personally represent and warrant that he or she has the authority to execute this Settlement Agreement on behalf of, and fully bind, each principal whom such individual represents or purports to represent.

7.        **Lead Plaintiff's Claims and the Benefits of Settlement**

Lead Plaintiff and Class Counsel believe that the claims asserted in the Action have merit, but they recognize and acknowledge the expense and length of continued proceedings necessary to prosecute the Action against Defendants through motion practice, trial, and potential appeals. Lead Plaintiff and Class Counsel also have taken into account the uncertain outcome and the risk of further litigation, as well as the difficulties and delays inherent in such litigation.   Lead Plaintiff and Class Counsel believe that the Settlement set forth in this Settlement Agreement confers substantial benefits upon the Class in light of the risks inherent in proceeding with the litigation, and have determined that the Settlement is fair, reasonable, adequate, and in the best interests of the Class.

8.        **No Admission of Liability**

8.1     Defendants deny each and all of the claims and contentions alleged against them in the Action, and continue vigorously to deny all charges of wrongdoing or liability against them arising out of any of the conduct, statements, acts, or omissions alleged, or that could have been alleged, in the Action. Nonetheless, Defendants have concluded that further conduct of the Action could be protracted and expensive, and that it is desirable that the Action be fully and

finally settled in the manner and upon the terms and conditions set forth in this Settlement Agreement.

8.2    The Final Order and Judgment will contain a statement that during the course of the Action, the Settling Parties and their respective counsel at all times complied with the requirements of Federal Rule of Civil Procedure 11.

8.3    Neither the Settlement nor the Settlement Agreement nor any of its terms nor any of the negotiation or proceedings connected with it shall be, or shall be construed as, an admission of liability or an admission of the truth of any allegation or the validity of any claim or defense on the part of any Settling Party in any respect. Neither the Settlement nor the Settlement Agreement nor any of its terms nor any of the negotiation or proceedings connected with it shall be admissible in any pending or future civil, criminal or administrative action or proceeding for any reason, other than an action or proceeding to enforce the terms of the Settlement Agreement.

**9.       Termination of the Settlement Agreement**

9.1    This Settlement Agreement is contingent on entry of the Preliminary Approval Order and the Final Order and Judgment, and upon the Final Order and Judgment becoming Final. The Settlement Agreement may be terminated if (a) the Court declines to enter the Preliminary Approval Order or the Final Order and Judgment, (b) the Court makes any material modifications to the terms of the Settlement, or (c) the Final Order and Judgment entered by the Court does not become Final. Neither a modification by the Court, nor a reversal on appeal, of any order relating to the Plan of Allocation shall be deemed to be a modification of a material part of this Settlement so as to trigger the option to terminate the Settlement Agreement as provided for in this Section. The amount(s) of any award(s) of attorneys' fees, costs, and

expenses is intended to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. No order of the Court or modification or reversal or appeal of any order of the Court concerning the amount(s) of any attorneys' fees, costs, or expenses awarded by the Court to Lead Plaintiff or Class Counsel shall affect whether the Final Order and Judgment is Final or constitute grounds for cancellation or termination of this Settlement Agreement.

9.2     The Settling Parties, through their counsel, have executed a Supplemental Agreement, setting forth certain conditions under which this Settlement may be terminated by certain Defendants, in their discretion, if the holders of more than an agreed upon number of shares eligible to participate in the Settlement submit valid and timely requests for exclusion. The Supplemental Agreement and its terms will be maintained in confidence and filed with the Court, if at all, only under seal. The Claims Administrator shall promptly notify Class Counsel and Defendants' Counsel of any and all requests for exclusion from the Class, including the identity(ies) of all person(s) making such request(s) and the number of shares purchased and sold by each during the Class Period and held by each at the end of the Class Period. Both the right to terminate and the effect of a termination pursuant to the Supplemental Agreement shall be determined by reference to the terms of the Supplemental Agreement.

9.3     If the Settlement Agreement is terminated, the following shall occur:

9.3.1     Class Counsel shall within fourteen (14) days after the date of termination of the Settlement Agreement notify the Financial Institution in writing to return to GCAH's insurance carrier and to Deloitte the *pro rata* amount contributed by each to the Settlement Fund, with all net income earned thereon, less any Taxes, and less any Notice and Administration Expenses actually incurred up to $250,000.

23

9.3.2    The Settling Parties shall revert to the litigation positions that they held on January 24, 2010.

9.3.3    The Settlement shall be without prejudice and none of the terms of this Settlement Agreement shall be effective or enforceable, except to the extent of costs of notice and administration that have been incurred.

9.3.4    The terms and provisions of the Settlement and the Settlement Agreement shall not be used in the Action or in any other proceeding for any purpose.

10.        **Class Certification**

Solely for purposes of the Settlement, the Defendants stipulate to the certification of the Class and to the appointment of Lead Plaintiff as the Class representative.

11.        <u>**Miscellaneous Provisions**</u>

11.1    If a case is commenced in respect of any Defendant contributing to the Settlement Amount (or any insurer contributing funds to the Settlement Amount on behalf of any Defendant) under Title 11 of the United States Code (Bankruptcy), or a trustee, receiver, conservator, or other fiduciary is appointed under any similar law, and a court of competent jurisdiction enters a final order determining the transfer of money to the Settlement Fund Account or any portion thereof by or on behalf of such Defendant to be a preference, voidable transfer, fraudulent transfer or similar transaction and any portion thereof is required to be returned, and such amount is not promptly deposited to the Settlement Fund Account by others, then, at the election of Class Counsel, the Settling Parties shall jointly move the Court to vacate and set aside the releases given and judgment entered in favor of the Defendants pursuant to this Settlement Agreement, which releases and judgment shall be null and void, and the parties shall

be restored to their respective positions in the litigation as of January 24, 2010, and any cash amounts in the Settlement Fund Account shall be returned as provided in Section 9.3 above.

      11.2    GCAH intends to issue a press release about the settlement of this Action.  GCAH will provide at least 5 days' advance notice to the Settling Parties of the substance of its press release.  All Settling Parties agree not to issue any press release of any kind regarding the Settlement or to contact any representative of the media or initiate publicity regarding the Settlement apart from the Notices provided in the Settlement Agreement and Preliminary Approval Order without providing at least 5 days' prior notice of the substance of the proposed release or statement to counsel for GCAH.

      11.3    This Settlement Agreement shall be interpreted in accordance with Nevada law, and the Settling Parties hereby submit to the jurisdiction of the Court for purposes of enforcing the Settlement.

      11.4    This Settlement Agreement may not be modified except by a writing signed by each of the Settling Parties.

      11.5    This Settlement Agreement may be executed in two or more counterparts, each of which shall be deemed an original and may be exchanged by facsimile, but all of which taken together shall constitute one and the same instrument.

      11.6    Before entry of the Final Order and Judgment, the Settlement Agreement may be modified or amended only by written agreement signed by or on behalf of all Settling Parties. Following entry of the Final Order and Judgment, the Settlement Agreement may be modified or amended only by written agreement signed on behalf of all Settling Parties, and approved by the Court.

11.7    The provisions of this Settlement Agreement may be waived only by an instrument in writing executed by the waiving party. The waiver by any party of any breach of this Settlement Agreement shall not be deemed to be or construed as a waiver of any other breach or by any other party, whether prior, subsequent, or contemporaneous, of this Settlement Agreement.

11.8    The Settling Parties (a) acknowledge that it is their intent to consummate the Settlement and (b) agree to exercise their best efforts and to act in good faith to cooperate to the extent necessary to effectuate and implement all terms and conditions of this Settlement Agreement.

11.9    The Settling Parties shall assert no claims of any violation of Rule 11 of the Federal Rules of Civil Procedure relating to the prosecution, defense, or settlement of the Action. The Settling Parties agree that the Settlement Amount and the other terms of the Settlement were negotiated at arm's length in good faith, and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel. Defendants and Defendants' Counsel agree not to assert in this Court that the litigation was brought or pursued by Lead Plaintiff or Class Counsel in bad faith or without a reasonable basis and will not bring or assert any claim against Lead Plaintiff or Class Counsel based on any allegation that the Released Claims were brought or pursued in bad faith or without a reasonable basis. Lead Plaintiff and Class Counsel agree not to assert in this Court that the litigation was defended by Defendants or Defendants' Counsel in bad faith or without a reasonable basis and will not bring or assert any claim against Defendants or Defendants' Counsel based on any allegation that any defense was asserted in bad faith or without a reasonable basis. Nothing in the foregoing shall limit any party's ability to assert that any allegation, claim or defense lacked merit or was untrue.

11.10   This Settlement Agreement, together with the Memorandum of Understanding and the Supplemental Agreement, constitutes the entire agreement among the Settling Parties and no representations, warranties or inducements have been made to any party concerning this Settlement, other than the representations, warranties, and covenants contained and memorialized in this Settlement Agreement, Memorandum of Understanding and in the Supplemental Agreement.

11.11   The headings herein are used for the purposes of convenience only and are not meant to have legal effect.

11.12   This Settlement Agreement shall be binding when signed, but the Settlement shall be effective only if and when the Final Order and Judgment becomes Final.

11.13   This Settlement Agreement shall not be construed more strictly against one party than another merely by virtue of the fact that it, or any part of it, may have been prepared by counsel for one of the parties, it being recognized that the Settlement Agreement is the result of arm's-length negotiations among the parties, and all parties have contributed substantially and materially to the preparation of this Settlement Agreement.

IN WITNESS WHEREOF, the Settling Parties, by their respective attorneys, acknowledge and agree to the foregoing.

GRANT & EISENHOFER P.A.

By _Megan D. McIntyre_
Megan D. McIntyre
1201 N. Market Street
Wilmington, DE 19801
*Counsel for Lead Plaintiff City of Richmond
Retirement System, and Lead Counsel for the
Class*

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

By _____
Charles E. Davidow
2001 K Street, NW
Washington, DC 20006-1047
*Counsel for Deloitte & Touche LLP*

GIBSON, DUNN & CRUTCHER LLP

By _____
Jonathan C. Dickey
200 Park Avenue, 47th Floor
New York, NY 10166-0193
*Counsel for Goldman, Sachs & Co., J.P.
Morgan Securities Inc., JPMorgan Chase &
Co., Cowen and Company, LLC, Deutsche Bank
Securities Inc., Banc of America Securities LLC,
Citigroup Global Markets Inc. and Wachovia
Capital Markets, LLC*

MORRISON & FOERSTER LLP

By _____
Erik J. Olson
755 Page Mill Road
Palo Alto, CA 94304-1018
*Counsel for Defendants Global Cash
Access Holdings, Inc., Kirk Sanford,
Harry C. Hagerty III, Walter G.
Kortschak, Charles J. Fitzgerald, E. Miles
Kilburn, William H. Harris, and Summit
Partners, L.P.*

PATTON BOGGS LLP

By _____
Philip M. Smith
1185 Avenue of the Americas, 30th Floor
New York, NY 10036
*Counsel for Defendants Karim Maskatiya,
Robert Cucinotta, and M&C International*

28

GRANT & EISENHOFER P.A.

By _____
Megan D. McIntyre
1201 N. Market Street
Wilmington, DE 19801
*Counsel for Lead Plaintiff City of Richmond Retirement System, and Lead Counsel for the Class*

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By *Charles E. Davidow*
Charles E. Davidow
2001 K Street, NW
Washington, DC 20006-1047
*Counsel for Deloitte & Touche LLP*

GIBSON, DUNN & CRUTCHER LLP

By _____
Jonathan C. Dickey
200 Park Avenue, 47th Floor
New York, NY 10166-0193
*Counsel for Goldman, Sachs & Co., J.P. Morgan Securities Inc., JPMorgan Chase & Co., Cowen and Company, LLC, Deutsche Bank Securities Inc., Banc of America Securities LLC, Citigroup Global Markets Inc. and Wachovia Capital Markets, LLC*

MORRISON & FOERSTER LLP

By _____
Erik J. Olson
755 Page Mill Road
Palo Alto, CA 94304-1018
*Counsel for Defendants Global Cash Access Holdings, Inc., Kirk Sanford, Harry C. Hagerty III, Walter G. Kortschak, Charles J. Fitzgerald, E. Miles Kilburn, William H. Harris, and Summit Partners, L.P.*

PATTON BOGGS LLP

By _____
Philip M. Smith
1185 Avenue of the Americas, 30th Floor
New York, NY 10036
*Counsel for Defendants Karim Maskatiya, Robert Cucinotta, and M&C International*

28

GRANT & EISENHOFER P.A.

By _____
Megan D. McIntyre
1201 N. Market Street
Wilmington, DE 19801
*Counsel for Lead Plaintiff City of Richmond
Retirement System, and Lead Counsel for the
Class*

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP

By _____
Charles E. Davidow
2001 K Street, NW
Washington, DC 20006-1047
*Counsel for Deloitte & Touche LLP*

GIBSON, DUNN & CRUTCHER LLP

By _____
Jonathan C. Dickey
200 Park Avenue, 47th Floor
New York, NY 10166-0193
*Counsel for Goldman, Sachs & Co., J.P.
Morgan Securities Inc., JPMorgan Chase &
Co., Cowen and Company, LLC, Deutsche Bank
Securities Inc., Banc of America Securities LLC,
Citigroup Global Markets Inc. and Wachovia
Capital Markets, LLC*

MORRISON & FOERSTER LLP

By _____
Erik J. Olson
755 Page Mill Road
Palo Alto, CA 94304-1018
*Counsel for Defendants Global Cash
Access Holdings, Inc., Kirk Sanford,
Harry C. Hagerty III, Walter G.
Kortschak, Charles J. Fitzgerald, E. Miles
Kilburn, William H. Harris, and Summit
Partners, L.P.*

PATTON BOGGS LLP

By _____
Philip M. Smith
1185 Avenue of the Americas, 30th Floor
New York, NY 10036
*Counsel for Defendants Karim Maskatiya,
Robert Cucinotta, and M&C International*

1

## **CERTIFICATE OF SERVICE**

2          I hereby certify that the foregoing Stipulation and Agreement of Settlement, with

3   exhibits, was served on February 17, 2010, via electronic service upon all persons registered to

4   receive service through the Court's electronic filing system in this action.

5

6   Dated:  February 17, 2010                    s/  Megan D. McIntyre
                                                   Megan D. McIntyre
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28