1  GARY R. GOODHEART
   Nevada Bar #1203
2  AMANDA J. COWLEY
   Nevada Bar #4578
3  JONES VARGAS
   3773 Howard Hughes Parkway
4  Third Floor South
   Las Vegas, NV 89169
5  Telephone: (702) 862-3300
   Facsimile: (702) 737-7705
6  *Local Counsel for Lead Plaintiff City of Richmond
   Retirement System and the Class*
7
8  STUART M. GRANT (*Pro Hac Vice*)
   MEGAN D. MCINTYRE (*Pro Hac Vice*)
9  JEFF A. ALMEIDA (*Pro Hac Vice*)
   GRANT & EISENHOFER P.A.
10 1201 N. Market Street
   Wilmington, DE 19801
11 Telephone: (302) 622-7000
   Facsimile: (302) 622-7100
12 *Lead Counsel for Lead Plaintiff City of Richmond
   Retirement System and the Class*
13
                      **UNITED STATES DISTRICT COURT**
14                         **DISTRICT OF NEVADA**
15
16
17 IN RE GLOBAL CASH ACCESS HOLDINGS    **Case No. 2:08-CV-01320-JCM-PAL**
18 INC. SHAREHOLDER LITIGATION
                                        **LEAD PLAINTIFF'S MOTION AND**
19                                      **MEMORANDUM OF LAW FOR**
                                        **PRELIMINARY APPROVAL OF**
20                                      **PROPOSED SETTLEMENT,**
                                        **PRELIMINARY CLASS**
21                                      **CERTIFICATION FOR SETTLEMENT**
                                        **PURPOSES, APPROVAL OF FORM**
22                                      **AND MANNER OF NOTICE AND**
                                        **PROOF OF CLAIM, AND SETTING OF**
23                                      **FINAL FAIRNESS HEARING**
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................ ii

INTRODUCTION ...................................................................................................... 1

STATEMENT OF FACTS .......................................................................................... 3

    I.       LEAD PLAINTIFF'S CLAIMS ...................................................................... 3

    II.     THE PROPOSED CLASS REPRESENTATIVE AND CLASS
            COUNSEL ........................................................................................................ 5

    III.    PROCEDURAL HISTORY, MEDIATION AND PROPOSED
            SETTLEMENT ................................................................................................. 6

ARGUMENT ............................................................................................................. 8

    I.       THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ............ 8

    II.     THE COURT SHOULD PRELIMINARILY CERTIFY THE CLASS
            FOR SETTLEMENT PURPOSES ................................................................. 12

          A.     The Prerequisites Of Rule 23(a) Are Satisfied .......................................... 14

               1.     The Settlement Class Is Sufficiently Numerous ............................ 14

               2.     There Are Common Questions Of Law And Fact ......................... 15

               3.     The Class Representatives' Claims Are Typical Of
                     Those Of The Settlement Class ...................................................... 16

               4.     Lead Plaintiff And Class Counsel Will Fairly And
                     Adequately Protect The Interest Of The Class .............................. 16

           B.     The Class's Claims Satisfy The Prerequisites Of Rule 23(b)(3) .............. 17

               1.     Common Legal And Factual Questions Predominate .................... 17

                2.     A Class Action Is Superior To Other Methods Of
                     Adjudication .................................................................................. 18

    III.    THE FORM AND CONTENT OF THE PROPOSED NOTICE TO THE
            CLASS ARE SUFFICIENT .......................................................................... 19

    IV.    THE COURT SHOULD APPROVE THE PARTIES' PROPOSED
            CLAIMS ADMINISTRATOR AND PROOF OF CLAIM FORM .................... 22

CONCLUSION .......................................................................................................... 23

i

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997)..................................................................................18

*Blackie v. Barrack,*
    524 F.2d 891 (9th Cir. 1975) ...................................................................15

*Churchill Village L.L.C. v. General Electric,*
    361 F.3d 566 (9th Cir. 2004) ...................................................................19

*In re Cirrus Logic Sec. Litig.4*
    155 F.R.D. 654 (N.D. Cal. 1994)..............................................................14

*City P'ship Co. v. Atlantic Acquisition L.P.,*
    100 F.3d 1041 (1st Cir. 1996)...................................................................11

*In re Community Bank of Northern Va.,*
    418 F.3d 277 (3d Cir. 2005)......................................................................13

*Estate of Jim Garrison v. Warner Brothers,*
    No. 95-cv-8328, 1996 WL 407849 (C.D. Cal. June 25, 1996)................16

*Fidel v. Farley,*
    534 F.3d 508 (6th Cir. 2008) ...................................................................21

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.,*
    55 F.3d 768 (3d Cir. 1995)..........................................................................9

*In re Gilat Satellite Networks, Ltd.,*
    No. 02-cv-1510, 2007 U.S. Dist. LEXIS 29062 (E.D.N.Y. Apr. 19, 2007) ............................10

*Harris v. Palm Springs Alpine Estates, Inc.,*
    329 F.2d 909 (9th Cir. 1964) ...................................................................14

*In re Indep. Energy Holdings PLC Sec. Litig.,*
    No. 00-cv-6689, 2003 U.S. Dist. LEXIS 17090 (S.D.N.Y. Sept. 26, 2003) ............................11

*Kaplan v. Rose,*
    49 F.3d 1363 (9th Cir. 1994) .....................................................................3

*Leppind v. Mukasey,*
    530 F.3d 862 (9th Cir. 2008) .....................................................................8

*Linney v. Cellular Alaska P'ship,*
    151 F.3d 1234 (9th Cir. 1998) ...................................................................8

*In re Livent, Inc. Noteholders Sec. Litig.*,
210 F.R.D. 512 (S.D.N.Y. 2002) .................................................................................18

*Perez-Funez v. Dist. Dir. I.N.S.*,
611 F. Supp. 990 (C.D. Cal. 1984) ...........................................................................14

*In re Portal Software, Inc. Sec. Litig.*,
No. C-03-5138, 2007 WL 1991529 (N.D. Cal. June 30, 2007)......................................*passim*

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
177 F.R.D. 216 (D.N.J. 1997)...................................................................................20

*Schwartz v. Harp*,
108 F.R.D. 279 (C.D. Cal. 1985) .............................................................................14

*In re Warner Chilcott Ltd. Sec. Litig.*,
No. 06-cv-11515, 2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008)............................................21

*In re Wireless Facilities, Inc. Sec. Litig. II*,
253 F.R.D. 607 (S.D. Cal. 2008) .............................................................................*passim*

STATUTES

15 U.S.C. § 77z-1(a)(7)............................................................................................20

OTHER AUTHORITIES

MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004) ...........................................9

Fed. R. Civ. P. Rule 23(a)........................................................................................14

Fed. R. Civ. P. Rule 23(a)(3) ...................................................................................16

Fed. R. Civ. P. Rule 23(a)(4) ...................................................................................16

Fed. R. Civ. P. Rule 23(b)(3) .............................................................................17, 19

Fed. R. Civ. P. Rule 23(c)(2)(B)................................................................................20

1    PLEASE TAKE NOTICE that upon the Stipulation and Agreement of Settlement, dated

2 February 17, 2010, including exhibits thereto; the accompanying Memorandum of Law; the

3 accompanying Declaration of Megan D. McIntyre and the exhibits thereto; and all other papers

4 and proceedings herein, Lead Plaintiff respectfully moves this Court for an Order preliminarily

5 approving the settlement of this securities class action, including preliminary certification of a

6 class for settlement purposes, approval of the form and manner of providing notice thereof to the

7 members of the class (including the form of the proof of claim to be disseminated to potential

8 class members), and the setting of a hearing date for consideration of Lead Plaintiff's motion for

9 final approval of the proposed settlement.

10

11                                                Respectfully submitted,

12    DATED:    February 17, 2010              /s/ Megan D. McIntyre
                                               Stuart M. Grant
13                                             Megan D. McIntyre
                                               Jeff A. Almeida
14                                             GRANT & EISENHOFER P.A.
                                               1201 N. Market Street – Suite 2100
15                                             Wilmington, Delaware 19801
                                               Tel: (302) 622-7000
16
                                               Gary R. Goodheart (Nev. Bar #1203)
17                                             Amanda J. Cowley (Nev. Bar #4578)
                                               JONES VARGAS
18                                             3773 Howard Hughes Parkway
                                               Third Floor South
19                                             Las Vegas, NV 89169
                                               Telephone: (702) 862-3300
20
                                               *Counsel for Lead Plaintiff City of Richmond*
21                                             *Retirement System and the Class*

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

Lead Plaintiff, City of Richmond Retirement System respectfully submits this memorandum in support of its motion for preliminary approval of a proposed settlement, preliminary class certification for settlement purposes, approval of form and manner of notice and proof of claim, and setting of final fairness hearing.

**PRELIMINARY STATEMENT**

Lead Plaintiff, City of Richmond Retirement System, on behalf of itself and the Class (as defined herein), and through Class Counsel, Grant & Eisenhofer P.A., submit this application for preliminary approval of a proposed settlement (the "Settlement") of this federal securities class action (the "Action"). The Settlement would resolve the Action against all defendants: Global Cash Access Holdings, Inc., Kirk Sanford, Harry C. Hagerty, III, Walter G. Kortschak, Charles J. Fitzgerald, E. Miles Kilburn, William H. Harris, Karim Maskatiya, Robert Cucinotta, Summit Partners L.P., M&C International, Deloitte & Touche LLP, Goldman, Sachs & Co., J.P. Morgan Securities Inc., JPMorgan Chase & Co., Banc of America Securities LLC, Citigroup Global Markets Inc., Cowen and Company, LLC, Deutsche Bank Securities Inc., and Wachovia Capital Markets, LLC (collectively, "Defendants"). The terms of the Settlement are set forth in the Stipulation and Agreement of Settlement dated February 17, 2010 (the "Settlement Agreement") which is being filed concurrently with this motion.[1] Under the Settlement, Defendants and/or their liability insurance carriers will pay a total of $5,875,000 (five million eight hundred seventy-five thousand dollars) into a Settlement Fund for the benefit of the Class,[2] in return for the dismissal of the Action and the complete and unconditional release by Class members of all of the Released Claims, as defined in Section 1.22 of the Settlement Agreement.

Lead Plaintiffs respectfully submit that preliminary approval of the Settlement is appropriate. The Settlement was achieved after a mediation before an experienced mediator,

---

[1] Unless otherwise specified, defined terms used in this memorandum of law shall have the same meaning as ascribed to the terms in the Settlement Agreement.

[2] Pursuant to the terms of the Settlement Agreement, GCAH's insurers will pay $5,000,000 and Deloitte will pay $875,000. Settlement Agreement at § 2.1.

and is the result of good faith, arm's-length negotiations among experienced securities counsel for Lead Plaintiff and Defendants. Because the parties did not agree on the terms of a Settlement until after the Court's decision on Defendants' motion to dismiss, after the parties had exchanged a substantial volume of discovery documents and commenced depositions, and after Lead Plaintiff's Motion for Class Certification had been fully briefed, the parties are fully conversant with the strengths and weaknesses of the claims and defenses in the Action. Accordingly, the parties are well-positioned to evaluate the risks of continued litigation against the benefits of the Settlement, and Lead Plaintiff and Class Counsel believe the Settlement produces a favorable result for the Class. For these reasons, which are discussed more fully below, the Settlement meets the test for preliminary approval.

Lead Plaintiff therefore requests that the Court enter an Order, in the form of the accompanying proposed Order of Preliminary Approval: (1) granting preliminary approval of the proposed Settlement; (2) preliminarily certifying the Class and appointing Lead Plaintiff as class representative for settlement purposes; (3) approving the proposed form and method of giving notice to the Class of the pendency of this litigation and of the Settlement (including appointment of a claims administrator and approval of the form of the proof of claim to be provided to potential class members); and (4) scheduling a fairness hearing during which the Court will consider, among other things, (a) the parties' request for final approval of the Settlement, the Plan of Allocation, and entry of the proposed Final Order and Judgment, (b) Class Counsel's application for an award of attorneys' fees and reimbursement of expenses, (c) dismissal of the Action, and (d) any other matters properly before the Court.

If the Court grants preliminary approval of the Settlement, Lead Plaintiffs respectfully propose the following schedule for the notice and final approval process:

- Mailing of individual Notices and Proof of Claim forms to all Class members who can be identified through reasonable effort within *thirty (30) days of entry of the Order of Preliminary Approval (the "Notice Date").*

- Publication of Summary Notice in *Investor's Business Daily* and transmission of the Summary Notice over the National Circuit of *Business Wire* within *ten (10) days of the Notice Date.*

- Fairness Hearing: *At the Court's convenience, but no fewer than ninety (90) days after the Notice Date.*

- Deadline for submission of requests for exclusion from the Class or objections to the Settlement, Plan of Allocation, or application for attorneys' fees and expenses: *twenty-one (21) days before the Fairness Hearing.*

- Deadline for filing a motion for final approval of the Settlement and for attorneys' fees and reimbursement of expenses: *ten (10) days before the Fairness Hearing.*

- Postmark deadline for submission of Proofs of Claim: *twenty (20) days after the Fairness Hearing.*

## STATEMENT OF FACTS

### I.   LEAD PLAINTIFF'S CLAIMS

This federal securities class action was brought pursuant to the Securities Act of 1933 ("Securities Act") on behalf of a class consisting of all persons and entities (excluding Defendants and certain related individuals and entities) who purchased or otherwise acquired shares of Global Cash Access Holdings, Inc. (the "Company" or "GCAH") common stock from September 22, 2005 to November 14, 2007 ("Class Period"), inclusive, either pursuant to, or traceable to, GCAH's initial public offering ("IPO") or secondary offering ("Secondary Offering"). The Complaint alleges that the prospectuses and registration statements that were filed in connection with the IPO and Secondary Offering contained untrue statements and omissions of material fact that served to artificially inflate the price of GCAH stock, causing Lead Plaintiff and the other class members to suffer losses when a series of corrective disclosures partially revealed the truth. *See* Complaint ¶¶ 1, 4-12, 95-100. The Defendants are the individuals and entities who sold stock in the IPO or Secondary Offering, and/or are alleged to be responsible for the untrue statements and omissions of material fact in the prospectuses and registration statements. *See id.* at ¶¶ 2, 20-42.

As alleged in the Complaint, GCAH, through a wholly-owned operating subsidiary, provides cash access and customer relationship marketing technologies to the casino and gaming industry. *See id.* at ¶ 3. The Company's products and services allow casino patrons to access cash through a variety of methods including ATM cash withdrawals, credit card cash

1   advances, point-of-sale debit card transactions, check verification and warranty, and money

2   transfers. *Id.*

3        GCAH was a private company until it went public via the IPO on September 22, 2005.

4   The first stage of the IPO was an offering of 16,064,157 shares of GCAH common stock at a

5   price of $14.00 per share. *See* Complaint at ¶¶ 4, 63. Of these shares, 9 million were offered

6   and sold on behalf of the Company while 7,064,157 were offered and sold by GCAH insiders

7   who had owned stock prior to the IPO. *Id.* In October 2005, an additional 2,212,224 shares of

8   common stock were also sold as part of the IPO, with 1,053,568 of those shares being offered

9   by GCAH, and the remaining 1,165,656 shares being offered by insider selling stockholders.

10  *Id.*

11       Buttressed by the purportedly strong financial results disseminated by the Company,

12  GCAH's stock price soared to a Class Period high closing price of $19.49 on April 28, 2006,

13  only seven months after the IPO. *See* Complaint at ¶ 5. The positive performance of GCAH's

14  stock in after-market trading enabled a May 25, 2006 Secondary Offering of an additional 10.4

15  million shares of GCAH common stock at a price of $15.75 per share. *Id.* All of the shares in

16  the Secondary Offering were offered by insider selling stockholders, including certain of the

17  Defendants. *Id.*

18       GCAH's reported successes were short-lived. Beginning in July 2007, a number of

19  high-ranking members of the Company's management team abruptly resigned, which raised

20  serious red flags with analysts and investors. *Id.* at ¶ 6. GCAH's stock nose-dived from the

21  $16 range in June and early July 2007 to around $10 per share by the end of October 2007. *Id.*

22       On November 14, 2007, after the close of the markets and only two weeks after the

23  resignation of its CEO, GCAH announced that it would delay the filing of its Quarterly Report

24  on Form 10-Q for the period ending September 30, 2007, pending an internal investigation into

25  undisclosed allegations being raised by a whistleblower. *See* Complaint at ¶ 7. The market's

26  reaction to this news was severe, causing GCAH's stock price to plummet $5.49 per share from

27  a closing price of $9.20 on November 14, 2007 to a closing price of $3.71 per share on

28

4

1  November 15, 2007 – a one day decline of 60% on extremely heavy trading volume of nearly

2  3.8 million shares (versus the average daily volume of less than 500,000 shares).  *See id.*

3       In December 2007, the Company's new CEO, Scott Betts ("Betts"), publicly announced

4  that the investigation involved issues pertaining to the calculation of commissions payable to

5  the Company's customers, which, according to the allegations of the whistleblower, the

6  Company was "miscoding" for the purpose of avoiding payment of certain transaction fees.

7  *See id.* at ¶ 8. Betts disclosed that the internal review had uncovered miscalculation issues

8  relating to approximately 20 of GCA's customers, and also issues with the reporting of

9  transactions for these 20 customers and approximately 120 others.  *Id.*

10       On January 30, 2008, GCAH filed its delayed 10-Q. The Company disclosed that,

11  based upon the results of the internal investigation, it was "probable" that there would be

12  disputes with customers regarding the amounts of the commissions paid, and that the Company

13  would have to pay $2.6 million to settle those disputes.  Complaint at ¶ 9.  The Company

14  recorded $2.6 million in additional commission costs for the quarter ending September 30,

15  2007.  *Id.*   Of that amount, $1.9 million related to transactions completed in 2005 and 2006.

16  *Id.*

17  **II.**    **THE PROPOSED CLASS REPRESENTATIVE AND CLASS COUNSEL**

18       Lead Plaintiff, the City of Richmond Retirement System, is a government-sponsored

19  retirement plan that manages assets for the public workers of the City of Richmond, Virginia.

20  Lead Plaintiff purchased shares of GCA common stock in both the IPO and the Secondary

21  Offering, as well as in the secondary market subsequent to both offerings. *See* Declaration of

22  Megan D. McIntyre a In support of Preliminary Approval of Settlement (hereafter, "McIntyre

23  Decl."), at Ex. A (Certification of City of Richmond Retirement System in Support of Motion

24  for Appointment as Lead Plaintiff and for Approval of its Selection of Counsel, at Schedule A).

25       Prior to Lead Plaintiff being appointed as such, its Executive Director signed a

26  certification attesting, among other things, that the City of Richmond Retirement System: (i) is

27  willing to serve as a representative party on behalf of the class; (ii) intends to actively monitor

28  and vigorously pursue this action for the benefit of the class; (iii) believes its claims are typical

of those of the other class members; (iii) did not purchase GCAH securities at the direction of counsel or in order to participate in litigation; and (iv) will not accept any payment for serving as a representative party on behalf of the class beyond its respective *pro rata* share of any recovery, except as ordered or approved by the court. *See* Certification, ¶¶ 4-7, 9 (McIntyre Decl. Ex. A).

Lead Plaintiff is represented in this action by experienced securities class action counsel at Grant & Eisenhofer P.A. *See* Firm Resume of Grant & Eisenhofer P.A. (McIntyre Decl. Ex. B). Lead Plaintiff, through its counsel, has vigorously prosecuted this action on behalf of the class and has negotiated a proposed settlement for the benefit of all class members.

**III.    PROCEDURAL HISTORY, MEDIATION AND PROPOSED SETTLEMENT**

On April 11, 2008, this class action was commenced by an individual shareholder who filed a complaint in the Southern District of New York on behalf of all those who purchased GCAH securities pursuant to or traceable to the Company's IPO. *Lowinger v. Global Cash Access Holdings, Inc.*, S.D.N.Y. No. 08-CV-3516 (SWK). On June 10, 2008, the City of Richmond Retirement System filed its own complaint in the Southern District of New York and concurrently filed a Motion For Appointment As Lead Plaintiff And For Approval Of Its Selection Of Counsel.

On June 26, 2008, the late Judge Kram (sitting in the Southern District of New York) consolidated the *Lowinger* action and the City of Richmond Retirement System action, appointed City of Richmond Retirement System as Lead Plaintiff in the consolidated action, and appointed Grant & Eisenhofer P.A. as Lead Counsel pursuant to the Private Securities Litigation Reform Act. *See* McIntyre Decl. Ex. C. On August 18, 2008, Lead Plaintiff filed the operative Consolidated Class Action Complaint in the consolidated action.

On September 18, 2008, the consolidated action was transferred from the Southern District of New York to the District of Nevada. On June 29, 2009, following briefing and oral argument, this Court denied Defendants' Motions to Dismiss. *See* Docket No. 111.

On September 28, 2009, the Court entered a Scheduling Order and Discovery Plan ("Scheduling Order"). Pursuant to that Scheduling Order, the parties have exchanged written

1  discovery (both interrogatories and document requests) and have produced hundreds of
2  thousands of pages of documents. In November 2009, Defendants took the depositions of
3  representatives of Lead Plaintiff and Lead Plaintiff's investment manager. In December 2009,
4  Lead Plaintiff took the depositions of two GCAH employees.

5      On December 16, 2009, all parties participated in a mediation in an effort to resolve the
6  Action. David Geronemus, a professional mediator with over sixteen years devoted to the
7  practice of alternative dispute resolution, served as the mediator with the consent of all parties.
8  While the mediation session itself did not produce a settlement agreement, the parties kept the
9  lines of communication open and were ultimately able to come to an agreement-in-principle on
10 a settlement, with the mediator's assistance, on December 23, 2009. The terms of that
11 settlement were formalized in a Memorandum of Understanding dated January 25, 2010, and
12 later in the Settlement Agreement.

13     Under the Settlement, GCAH's insurance carrier will pay $5,000,000 and Deloitte will
14 pay $875,000 for the benefit of the plaintiff class, in consideration for the dismissal of the
15 Action and the release and discharge of all "Released Claims." *See* Settlement Agreement at §
16 2. Specifically, Lead Plaintiff and the other class members will release the Defendants (and
17 certain persons and entities associated with the Defendants) from all claims that (i) were or
18 could have been asserted in the Action; (ii) arise in connection with the purchase, acquisition,
19 or holding of GCAH common stock during the Class Period; or (iii) relate to the subject matter
20 of the Action and/or the allegations of the Consolidated Class Action Complaint filed on
21 August 18, 2008 and relate to the claimant's ownership of or transactions in GCAH common
22 stock during the Class Period.[3] *Id.* at § 2.3.

23     The Settlement Agreement provides that the $5,875,000 shall be deposited into an
24 escrow account (the "Settlement Fund") no later than thirty business days after entry of an
25 order preliminarily approving the settlement. *Id.* at § 2.2. All funds in the Settlement Fund
26 shall be deemed and considered to be in the legal custody of the Court until such time as they

27

28 [3] The term "Released Claims" expressly excludes, however, direct or derivative claims brought
   by or on behalf of GCAH.

1   shall be distributed pursuant to further order(s) of the Court or pursuant to the terms of the

2   Settlement Agreement. Class Counsel shall serve as the escrow agent, and must invest the

3   funds only in United States Treasury securities and/or securities of United States agencies

4   backed by the full faith and credit of the United States Treasury, or mutual funds or money

5   market accounts that invest exclusively in the foregoing securities, with the exception of

6   $250,000 which may be retained in cash in the Settlement Fund for the purpose of paying taxes

7   and other expenses associated with the administration of the Settlement.

8          The Settlement Agreement and its supporting papers provide for the form and manner

9   of providing notice of the Settlement to the class, the proposed Plan of Allocation for the

10  allocation of the Settlement Fund among class members (after payment of taxes, attorneys' fees

11  and expenses, and the costs of notice and administration), appointment of Analytics Inc. as the

12  claims administrator, the form of the Proof of Claim by which class members shall submit

13  claims to receive a share of the Settlement proceeds, the procedures for submitting Proofs of

14  Claim, the procedures for seeking exclusion from the class or objecting to any terms of the

15  Settlement, and the procedure by which Class Counsel shall apply for attorneys' fees and

16  reimbursement of expenses incurred in prosecuting this Action. Final approval of the

17  Settlement will result in the dismissal with prejudice of the Action in its entirety against all

18  Defendants, as well as releases by Lead Plaintiff and the other class members of the Released

19  Claims (defined above).

20                                     **ARGUMENT**

21  **I.     THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED**

22         Public policy strongly favors settlement as a means of resolving disputes. *See Leppind*

23  *v. Mukasey,* 530 F.3d 862, 863 (9th Cir. 2008) (there is a "strong judicial policy that favors

24  settlements of disputes") (*quoting Guerrero v. RJM Acquisitions, LLC,* 499 F.3d 926, 939 (9th

25  Cir. 2007). This public policy bias is particularly well-suited to complex class action litigation,

26  where settlement can minimize substantial litigation expenses on both sides and conserve

27  judicial resources. *See Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)

28  (refusing to disturb approval of class action settlement "in light of the strong judicial policy that

favors settlements, particularly where complex class action litigation is concerned") (*quoting*

*Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (*citing Officers for Justice v.*

*Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 626 (9th Cir. 1982)); *In re General*

*Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995)

("The law favors settlement, particularly in class actions and other complex cases where

substantial judicial resources can be conserved by avoiding formal litigation") (citing 2

Newberg & Conte, Newberg on Class Actions § 11.41).

The approval of a proposed class action settlement "is generally a two-step process." *In*

*re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008). As one court in

this Circuit has explained:

> At the preliminary approval stage, the court "should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)." Fed. Judicial Ctr., Manual for Complex Litigation, § 21.633 (4th ed. 2004). The court then approves the form and manner of notice and sets a final fairness hearing, where it will make a final determination on the fairness of the class settlement. *See id.*

*In re Wireless Facilities*, 253 F.R.D. at 610; *see also In re Portal Software, Inc. Sec. Litig.*, No.

C-03-5138, 2007 WL 1991529 (N.D. Cal. June 30, 2007) (preliminarily approving securities

class action settlement upon two-part inquiry of whether proposed class satisfied Rule 23 and

whether proposed settlement should be preliminarily approved).

At the preliminary approval stage, the Court is not required to undertake an in-depth

consideration of the relevant factors for final approval. Instead, the "judge must make a

preliminary determination on the fairness, reasonableness, and adequacy of the settlement

terms and must direct the preparation of notice of the certification, proposed settlement, and

date of the final fairness hearing." MANUAL FOR COMPLEX LITIGATION § 21.632 (4th ed. 2004).

If a proposed settlement "appears to be the product of serious, informed, non-collusive

negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to

class representatives or segments of the class, and falls within the range of possible approval,

then the court should direct that the notice be given to the class members of a formal fairness

hearing." *In re Portal Software*, 2007 WL 1991529, at *5 (*quoting* Manual for Complex

9

1   Litigation § 30.44 (2d ed. 1985)); *see also In re Gilat Satellite Networks, Ltd.,* No. 02-cv-1510,

2   2007 U.S. Dist. LEXIS 29062, at *31 (E.D.N.Y. Apr. 19, 2007) ("Preliminary approval of a

3   proposed settlement is appropriate where it is the result of serious, informed, and non-collusive

4   negotiations, where there are no grounds to doubt its fairness and no other obvious deficiencies

5   . . . and where the settlement appears to fall within the range of possible approval") (citing

6   Manual for Complex Litigation § 30.41). Applying the approach set forth above, the Court

7   should preliminarily approve the Settlement because it falls squarely within the range of

8   possible approval, is the product of informed, arm's-length negotiations, has no obvious

9   deficiencies, and does not grant preferential treatment to individual members or segments of the

10   proposed class.

11        *First*, the Settlement amount of $5,875,000 represents a fair and reasonable result after

12   almost two years of hotly-contested litigation. During this time, each side vigorously

13   advocated its positions. The Settlement amount of $5,875,000 reflects the evidence Lead

14   Plaintiff had developed against Defendants and, at the same time, recognizes the inherent risks,

15   costs and potential for delay associated with a complex securities litigation, including the

16   meaningful possibility that Defendants might prevail on summary judgment or at trial, or might

17   be unable to pay a substantial judgment after trial. In particular, Lead Plaintiff agreed to the

18   Settlement in recognition of the fact that GCAH and its officers and directors have limited

19   liability insurance coverage (only $10 million), which has already been dissipated somewhat by

20   defense costs and would be even further dissipated if the litigation were to continue.

21   Additionally, Lead Plaintiff recognized the risks associated with its pending motion for class

22   certification, including the risk that certain GCAH investors would be excluded from the class,

23   and thus unable to recover their losses, due to technical concerns about their ability to establish

24   the traceability of their shares to the IPO or Secondary Offering. *See In re Portal Software*,

25   2007 WL 1991529, at *6 (preliminarily approving class action securities settlement of

26   $3,250,000 as "'within the range of possible approval'" based on "risk of summary judgment ...

27   and the anticipated expense and complexity of further litigation").

28

*Second*, as set forth above, the proposed Settlement is the result of intensive arm's-length negotiation between the parties, following a mediation conducted by a well-respected, experienced mediator. These factors militate in favor of preliminary approval of the Settlement because they strongly indicate that there was no collusion in the result the parties achieved. *See In re Wireless Facilities*, 253 F.R.D. at 610 ("Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair.") (*citing Nat'l Rural Telecomms. Coop. v. Directv, Inc.*, No. 99-cv-5666, 2003 U.S. Dist. LEXIS 2537, at *13 (C.D. Cal. Jan. 5, 2004)); *see also In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00-cv-6689, 2003 U.S. Dist. LEXIS 17090, at *13 (S.D.N.Y. Sept. 26, 2003) ("[T]he fact that the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable").

*Third*, the parties were well-informed of the respective strengths and weaknesses of their claims and defenses at the time of the Settlement. Class Counsel researched the claims against Defendants for months prior to filing the Complaint, including the review of numerous public filings. After the Court denied Defendants' motion to dismiss, the parties exchanged written initial disclosures, propounded and responded to various requests for documents and interrogatories, reviewed and analyzed a substantial volume of documents produced in response to those requests, and fully briefed Lead Plaintiff's motion for class certification. Although discovery was not yet completed, the parties and their counsel were sufficiently familiar with the factual and legal arguments, both for and against their positions, to enable them to make an informed decision regarding the Settlement. There is a presumption in favor of a proposed settlement when the parties have conducted sufficient discovery to allow them to investigate the pertinent factual and legal issues and to assess the merits of their respective cases. *See, e.g., City P'ship Co. v. Atlantic Acquisition L.P.*, 100 F.3d 1041 (1st Cir. 1996).

*Fourth*, the parties are represented by counsel experienced in securities class action litigation. Class Counsel has extensive experience and expertise in the prosecution of complex securities litigation and class action proceedings throughout the United States. Counsel for

11

1  Defendants similarly have expertise from a long track record in securities class actions and

2  have vigorously defended Defendants throughout the course of the litigation.

3       *Fifth*, the Settlement does not grant preferential treatment to Lead Plaintiff or any other

4  Class member or segment of the Class. All investors who purchased GCAH common stock

5  during the Class Period will be eligible to share in the Settlement proceeds, provided that they

6  held their shares until at least July 24, 2007, which is the day before the Company's stock price

7  declined substantially upon the announcement of its Chief Financial Officer's resignation. For

8  Class members who sold shares after that announcement, the proposed Plan of Allocation –

9  which is described in the Notice and will be submitted for Court approval at or before the final

10 fairness hearing – provides for calculation of each Class member's Recognized Claim in a

11 manner consistent with the statutory damages formula provided by Section 11 of the Securities

12 Act, subject to certain assumptions that will be applicable across-the-board to all Class

13 members.[4]

14       For all of these reasons, Lead Plaintiff respectfully requests that the Court preliminarily

15 approve the Settlement, so notice can be provided to putative class members and a final fairness

16 hearing can be held. *See In re Wireless Facilities*, 253 F.R.D. at 612 (preliminarily approving

17 securities class action settlement of $4,500,000 as "fair, adequate and reasonable" where

18 experienced class action attorneys negotiated arms-length agreement that achieved a "positive

19 result for the potential class members"); *In re Portal Software*, 2007 WL 1991529, at *6

20 (preliminarily approving securities class action settlement of $3,250,000 where "the court

21 cannot say that the proposed settlement is obviously deficient or is not 'within the range of

22 possible approval'") (citation omitted).

23

24 **II.    THE COURT SHOULD PRELIMINARILY CERTIFY THE CLASS FOR
         SETTLEMENT PURPOSES**

25       Defendants have consented to certification of a class (the "Class") for purposes of the

26 Settlement only, consisting of all persons and entities who purchased or otherwise acquired

27 _____

28 [4] For example, the proposed Plan of Allocation provides for certain assumptions regarding traceability of shares to a particular offering, depending upon the date of purchase.

                                        12

1  shares of GCAH common stock from September 22, 2005 to November 14, 2007 (the "Class

2  Period"), inclusive. *See* Settlement Agreement §§ 1.4, 10. By agreement of the parties, the

3  proposed Class excludes (1) the Defendants; (2) members of the immediate family of each of

4  the Defendants; (3) the subsidiaries and affiliates of GCAH; (4) any person or entity who is, or

5  was during the Class Period, a partner, officer, executive, employee or director of GCAH, or a

6  partner, officer, executive, or director of any of the other Defendants; (5) any entity in which

7  any such excluded person or entity has a majority interest; (6) the legal representatives, heirs,

8  successors or assigns of any of the excluded persons or entities specified in this paragraph; and

9  (7) the insurance carriers who provide directors' and officers' liability insurance to GCAH

10 and/or any of the Defendants related to the claims in this Action. Also excluded from the Class

11 will be any putative Class members who exclude themselves by filing a timely and valid

12 request for exclusion in accordance with the requirements set forth in the Notice to be provided

13 to the Class. *See id.*

14       Courts have long acknowledged the propriety of class certification for purposes of a

15 class action settlement. *See In re Wireless Facilities*, 253 F.R.D. at 610 ("Parties may settle a

16 class action before class certification and stipulate that a defined class be conditionally certified

17 for settlement purposes") (*citing Molski v. Gleich*, 318 F.3d 937 (9th Cir. 2003)); *see also In re

18 Community Bank of Northern Va.*, 418 F.3d 277, 299 (3d Cir. 2005) ("'all Federal Circuits

19 recognize the utility of Rule 23(b)(3) settlement classes' as a means to facilitate the settlement

20 of complex nationwide class actions") (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591,

21 618 (1997)). Like any other class certification decision, certification of a class for settlement

22 purposes requires a determination that the requirements of Rule 23 are met. *In re Wireless

23 Facilities*, 253 F.R.D. at 610. Specifically, a class action must meet each of the four

24 requirements set forth in Rule 23(a), and at least one of three requirements set forth in Rule

25 23(b). Class certification for settlement purposes is appropriate here because the Action meets

26 the requirements of Rule 23(a) and Rule 23(b)(3).

27

28

### A.    The Prerequisites Of Rule 23(a) Are Satisfied

Certification is appropriate under Rule 23(a) if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).

#### 1.    The Settlement Class Is Sufficiently Numerous

The proposed Class, consisting of all persons who purchased or otherwise acquired GCAH stock during a Class Period of more than two years, is sufficiently numerous that joinder of all members would be impracticable. The Ninth Circuit has stated that "impracticability does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class."' *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964) (citation omitted). In fact, classes with as few as twenty-five members have been found large enough for certification. *See, e.g., In re Cirrus Logic Sec. Litig.*, 155 F.R.D. 654, 656 (N.D. Cal. 1994); *Perez-Funez v. Dist. Dir. I.N.S.*, 611 F. Supp. 990, 995 (C.D. Cal. 1984). The exact size of the class need not be known, so long as logic dictates that the class is large. *See Cirrus Logic*, 155 F.R.D. at 656; *Schwartz v. Harp*, 108 F.R.D. 279, 281-82 (C.D. Cal. 1985) ("A failure to state the exact number in the proposed class does not defeat class certification, and plaintiff's allegations plainly suffice to meet the numerosity requirement of Rule 23.") (citations omitted).

Throughout the Class Period, GCAH's common stock was actively traded on the New York Stock Exchange. While the exact number of Class members is unknown, GCAH's 2006 and 2007 annual reports reveal that the average number of shares of common stock outstanding was over 80 million. During the IPO and Secondary Offering, over 28.5 million shares were sold on the public market. It is reasonable to presume that the Class consists of thousands of geographically dispersed members, and thus the joinder of all members would be impracticable. *See, e.g., In re Portal Software*, 2007 WL 1991529, at *3 (finding numerosity for purposes of preliminary settlement approval where plaintiffs estimated that proposed class

had "thousands" of members); *In re Wireless Facilities,* 253 F.R.D. at 611 (finding numerosity for purposes of preliminary settlement approval where stock was traded on NASDAQ and potential class members were in the thousands)  Accordingly, the Class is sufficiently numerous to satisfy Rule 23(a)(1).

## 2.    There Are Common Questions Of Law And Fact

Federal securities cases like this one easily meet the commonality requirement of Rule 23(a)(2) because the claims of all Class members arise from the same course of conduct by the Defendants and involve the same legal theories.  To satisfy Rule 23(a)(2), "the existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class."  *In re Portal Software*, 2007 WL 1991529, at *3, *citing Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  Further, specific facts may vary among individual class members as long as the named plaintiff's claims are based on the same legal theory as the other members.  *See Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975).

Here, Lead Plaintiff's claims against the Defendants present many questions of law and fact which are common to all members of the Class, including:

- Whether the Defendants participated in the course of conduct described in the Complaint;

- Whether the registration statements and prospectuses contained untrue statements or omitted facts;

- Whether the alleged untrue statements and omissions were material;

- Whether the Defendants' conduct violated Sections 11, 12(a)(2) and/or 15 of the Securities Act;

- Whether the Defendants can meet their burden of proof on their affirmative defenses, including their "negative causation" and "due diligence" defenses;

- To what extent the Class members have sustained damages that were caused by the Defendants' violations of the securities laws; and

- The proper measure of the damages sustained by members of the Class.

Thus, the Rule 23(a)(2) commonality requirement is satisfied.

### 3. The Class Representatives' Claims Are Typical Of Those Of The Settlement Class

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *In re Portal Software*, 2007 WL 1991529, at *3 (*citing Hanon v. Data Products*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation omitted), *Estate of Jim Garrison v. Warner Brothers*, No. 95-cv-8328, 1996 WL 407849, at *2 (C.D. Cal. June 25, 1996) ("Typicality in the antitrust context will be established by plaintiffs and all class members alleging the same antitrust violations by the defendants").

Here, the injuries to Lead Plaintiff and the other members of the Class are attributable to the same alleged course of conduct by the Defendants, and liability for this conduct is predicated on the same legal theories. Lead Plaintiff, like the other Class members, would have to prove that the registration statements and prospectuses contained untrue statement of material fact or omitted material facts, and would have to respond to the same affirmative defenses by Defendants. As such, the Rule 23(a)(3) typicality requirement is satisfied. *See In re Wireless Facilities*, 253 F.R.D. at 611 (finding element of typicality where "[t]he proof Lead Plaintiff would need to establish its claims would also prove the claims of the proposed Settlement Class.").

### 4. Lead Plaintiff And Class Counsel Will Fairly And Adequately Protect The Interest Of The Class

Rule 23(a)(4) is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Court must measure the adequacy of representation by two standards: "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and

their counsel prosecute the action vigorously on behalf of the class?" *In re Wireless Facilities*, 253 F.R.D. at 611 (*quoting Staton v. Boeing Co.*, 327 F.3d 938, 958 (9th Cir. 2003)).

Lead Plaintiff and Class Counsel have no conflicts of interest with other Class members because Lead Plaintiff's claims are typical of those of other Class members. *See In re Wireless Facilities*, 253 F.R.D. at 611-12 ("Here, it does not appear that Lead Plaintiff and its counsel have any conflicts of interest with other class members because the claims of Lead Plaintiff are typical of the proposed Settlement Class."). In addition, Lead Plaintiff and Class Counsel have been prosecuting the Action vigorously on behalf of the Class. Lead Plaintiff and the Class share the common goal of maximizing recovery, and there is no conflict between them. Class Counsel has extensive experience and expertise in complex securities litigation and class actions proceedings throughout the United States, and is qualified and able to conduct this litigation – as they have demonstrated in drafting the Complaint, defeating the Defendants' motion to dismiss, and negotiating the Settlement. Rule 23(a)(4) is therefore satisfied.

### B.    The Class's Claims Satisfy The Prerequisites Of Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The objective behind the two requirements of Rule 23(b)(3) is the promotion of economy and efficiency." *In re Portal Software*, 2007 WL 1991529, at *4 (*citing* Fed. R. Civ. P. 23(b)(3) advisory committee notes). These requirements are easily met in this case.

### 1.    Common Legal And Factual Questions Predominate

The common questions necessary to satisfy Rule 23(b)(3) "'need not be dispositive of the litigation.'" *In re Portal Software*, 2007 WL 1991529, at *5 (*quoting Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 489 (E.D. Cal. 2006)). Instead, the Court must determine whether any issues "'are subject to generalized proof [or] applicable to the class as a whole" and conversely whether any issues "must be the subject of proof on behalf of individualized class members.'" *Id*. Since "no precise test can determine whether common issues

17

predominate the Court must pragmatically assess the entire action and the issues involved." *Id.*
The Rule 23(b)(3) test of predominance is "readily met" in securities fraud cases, such as this.
*Amchem Prods., Inc. v. Windsor,*, 521 U.S. 591, 625 (1997).  Courts in securities cases
"typically evince a greater willingness to certify classes involving individualized damages, as
opposed to individualized liability issues." *In re Portal Software*, 2007 WL 1991529, at *5.
(citations omitted); *see also In re Livent, Inc. Noteholders Sec. Litig.*, 210 F.R.D. 512, 517
(S.D.N.Y. 2002) (common issues predominate where "each class member is alleged to have
suffered the same kind of harm pursuant to the same legal theory arising out of the same
alleged course of conduct [and] [t]he only individualized question concerns the amount of
damages").

Here, all the Class members' claims against Defendants are based on the same alleged
course of conduct by the Defendants, and involve the same legal theories.  There are numerous
common issues relating to the Defendants' liability, which predominate over any individualized
issues.  The predominance requirement of Rule 23(b)(3) is therefore satisfied.  *See In re
Wireless Facilities*, 253 F.R.D. at 612 (finding that common issues predominate "because each
class member purchased and/or acquired Wireless common stock during the Settlement Class
Period at alleged artificially inflated prices"); *In re Portal Software*, 2007 WL 1991529, at *5
("Here, the common questions concern whether defendants violated the Securities Act and, if
so, whether such violations affected the price plaintiffs paid for Portal stock.") (*citing In re
Emulex*, 210 F.R.D. 717, 721 (C.D. Cal. 2002) (granting motion for class certification because
"[t]he predominant questions of law or fact at issue in this case are the alleged
misrepresentation defendants made during the class period and are common to the class")
(citations omitted)).

### 2.    A Class Action Is Superior To Other Methods Of Adjudication

Rule 23(b)(3) sets forth the following non-exhaustive factors to be considered in
making a determination of whether class certification is the superior method of litigation: "(A)
the class members' interests in individually controlling the prosecution . . . of separate actions;
(B) the extent and nature of any litigation concerning the controversy already begun by . . .

1  class members; (C) the desirability . . . of concentrating the litigation of the claims in the

2  particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P.

3  23(b)(3).

4      The scope and complexity of Lead Plaintiff's claims against Defendants, together with

5  the massive cost of individualized litigation, make it unlikely that the vast majority of the Class

6  members would be able to seek relief without class certification. Moreover, it is clearly

7  desirable to concentrate the claims of all Class members in this forum, and Lead Plaintiff does

8  not foresee any difficulties in the management and settlement of this action as a class action.

9      Considering these factors, this class action is clearly "superior to other available

10 methods for the fair and efficient adjudication" of the claims of the vast number of purchasers

11 of GCAH stock. Indeed, courts in this Circuit have concluded that the class action device in

12 securities cases is usually the superior method by which to redress injuries to a large number of

13 individual plaintiffs. *In re Wireless Facilities*, 253 F.R.D. at 612 ("This Court finds that class

14 resolution of this action is superior to other available methods of adjudication of the

15 controversy because the claims of many individuals will be effectively resolved at one time,

16 eliminating the possibility of repetitious litigation that would waste the parties' and the Court's

17 resources."). Accordingly, the requirements of Rule 23(b)(3) are satisfied, and the Court

18 should preliminarily certify this action as a class action on behalf of the proposed Class.

19 **III.    THE FORM AND CONTENT OF THE PROPOSED NOTICE TO THE**
**CLASS ARE SUFFICIENT**
20

21     In order to afford class members the opportunity to object to a proposed class-wide

22 settlement, reasonable notice must be provided to those class members. Notice is satisfactory if

23 it "generally describes the terms of the settlement in sufficient detail to alert those with adverse

24 viewpoints to investigate and to come forward and be heard." *Churchill Village L.L.C. v.*

25 *General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) (*quoting Mendoza v. Tuscon Sch. Dist. No.*

26 *1*, 623 F.2d 1338, 1352 (9th Cir. 1980). Where a proposed settlement is coupled with a request

27 for class certification under Rule 23(b)(3) of the Federal Rules of Civil Procedure, class notice

28 must meet the requirements of both Rules 23(c)(2) and 23(e).

In terms of the form and manner of providing notice, Rule 23(e)(1) instructs courts to "direct notice in a reasonable manner to all class members who would be bound by the proposal," while Rule 23(c)(2)(B) requires the notice to be the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Rule 23 "does not require the parties to exhaust every conceivable method of identifying the individual class members," and therefore for class members "whose names and addresses cannot be determined by reasonable efforts, notice by publication will suffice under Rule 23(c)(2) and under the due process clause." *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 177 F.R.D. 216, 232 (D.N.J. 1997).

The content of a class notice in a securities class action is governed by Rule 23(c)(2)(B) and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). Rule 23(c)(2)(B) requires that the notice:

> clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The PSLRA requires disclosure of the following additional information:

- The amount of the settlement proposed to be distributed to the parties to the action, determined in the aggregate and on an average per share basis;

- If the parties do not agree on the average amount of damages per share that would be recoverable if the plaintiff prevailed on each claim alleged, a statement from each settling party concerning the issue or issues on which the parties disagree;

- A statement indicating which parties or counsel intend to apply for an award of fees or costs from the settlement fund, as well as the amount to be requested (including on an average per share basis) and a brief explanation supporting the fees and costs sought;

- The name and contact information of representatives of plaintiffs' counsel who will be reasonably available to answer class members' questions; and

- The reasons for the settlement.

*See* 15 U.S.C. § 77z-1(a)(7).

1    In the present case, both the form and the content of the proposed Notice to the Class are

2 sufficient and should be approved by the Court.

3    *First*, Lead Plaintiff has submitted two forms of notice to the Court for approval: a

4 long-form Notice ("Notice") and a Summary Publication Notice ("Summary Notice"), which

5 are attached as Exhibits 1 and 3, respectively, to the proposed Order of Preliminary Approval.

6 The proposed Order of Preliminary Approval provides that the Claims Administrator will use

7 its best efforts to identify Class members, and to cause the Notice to be sent by first-class mail

8 to those Class members (as well as to brokers and nominees holding shares on behalf of

9 beneficial owners, who will be directed to take steps to ensure that the Notice is provided to the

10 beneficial owners). In addition, the Notice will be posted on the Claims Administrator's

11 website, and the Summary Notice will be published in *Investor's Business Daily* and

12 transmitted over the National Circuit of Business Wire. These are all well-established means of

13 providing legally sufficient notice in securities class actions. *See, e.g., In re Wireless Facilities,*

14 253 F.R.D. at 613 (notice program was adequate where it involved mailing to stockholders who

15 could be identified with reasonable effort, plus publication of a summary notice in *Investor's*

16 *Business Daily*); *Fidel v. Farley*, 534 F.3d 508, 514-15 (6th Cir. 2008) (notice program

17 "comported with the requirements of both due process and Rule 23(c)(2)(B)" where notice was

18 mailed to brokerage houses and summary notice was published in *Investor's Business Daily*

19 and on the internet); *In re Warner Chilcott Ltd. Sec. Litig.*, No. 06-cv-11515, 2008 WL

20 5110904, at *3 (S.D.N.Y. Nov. 20, 2008) (same).

21    *Second*, the Notice provides detailed descriptions of the Action, the Settlement, the

22 Class, and the options available to potential Class members, including the right to object or opt

23 out. *See* Exhibit 1 to the proposed Order of Preliminary Approval. The Summary Notice

24 provides similar information in a summary form, and informs the reader how to obtain a copy

25 of the more detailed Notice. *See* Exhibit 3 to the proposed Order of Preliminary Approval.

26 With respect to the PSLRA's requirements, the Notice: (1) states the aggregate and per share

27 amounts that are estimated to be distributed to the Class; (2) describes the parties' areas of

28 disagreement with respect to the Class's recoverable damages; (3) states that Class Counsel

will request attorneys' fees and reimbursement of litigation expenses and the basis for the request; (4) identifies a representative of Class Counsel who can be contacted for additional information; and (5) explains the reasons for the Settlement.

Accordingly, Lead Plaintiffs respectfully request that this Court approve the form and content of the proposed Class Notice and Summary Notice.

## IV.  THE COURT SHOULD APPROVE THE PARTIES' PROPOSED CLAIMS ADMINISTRATOR AND PROOF OF CLAIM FORM

The parties' proposed Proof of Claim form is attached as Exhibit 2 to the proposed Order of Preliminary Approval. This Proof of Claim form, which is modeled on forms used in other securities class action settlements, will be disseminated to potential Class members along with the Notice, and provides the means by which Class members must document and submit their claims to receive a share of the Settlement proceeds. The Proof of Claim form requires the claimant to submit information about their transactions in GCAH common stock, along with supporting documentation, which will be enable the Claims Administrator to determine their eligibility to receive Settlement proceeds and to calculate their Recognized Claims in accordance with the parties' proposed Plan of Allocation. The Proof of Claim form also recites the releases to be given by Class members in the Settlement, and requires the claimant's signature acknowledging those releases, in order to ensure that Class members are fully apprised of the consequences of participating in the Settlement. The procedural requirements for the submission of Proofs of Claim are set forth in Sections 4.11 and 4.12 of the Settlement Agreement and in paragraph 10 of the proposed Order of Preliminary Approval.

The parties have agreed, subject to Court approval, to retain Analytics Inc. as the Claims Administrator for the Settlement. Background information regarding Analytics Inc. is attached as Exhibit D to the accompanying Declaration of Megan D. McIntyre. In its capacity as Claims Administrator, Analytics will be required to take all reasonable steps and use its best efforts to identify and provide Notice to the Class members. Under the supervision of Class Counsel, and subject to the jurisdiction of the Court, the Claims Administrator will also receive and process all Proof of Claim forms, to determine claimants' eligibility to share in the

Settlement proceeds and to calculate the amount of each claimant's Recognized Claim pursuant to the Plan of Allocation.  Prior to making any distributions to Class members, Class Counsel will apply to the Court, on notice to Defendants' Counsel, for an order approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Proofs of Claim submitted.

Lead Plaintiff respectfully requests that the Court should approve the appointment of Analytics Inc. as Claims Administrator for the Settlement, and approve the substance of the parties' proposed Proof of Claim form.

## CONCLUSION

For all the foregoing reasons, Lead Plaintiff respectfully requests that the Court enter an order in the form of the proposed Order of Preliminary Approval accompanying this motion: (1) preliminarily approving the proposed Settlement as within the range of possible fairness, reasonableness and adequacy; (2) preliminarily certifying the Class for purposes of the Settlement; (3) approving the form and manner of the proposed Summary Notice, Notice, and Proof of Claim form, and appointing Analytics Inc. as Claims Administrator; and (4) setting a date and time for the hearing regarding final approval of the Settlement, Plan of Allocation, and Class Counsel's application for attorneys' fees.

Respectfully submitted,

DATED: February 17, 2010

/s/ Megan D. McIntyre
Stuart M. Grant
Megan D. McIntyre
Jeff A. Almeida
GRANT & EISENHOFER P.A.
1201 N. Market Street – Suite 2100
Wilmington, Delaware  19801
Tel:  (302) 622-7000

Gary R. Goodheart (Nev. Bar #1203)
Amanda J. Cowley (Nev. Bar #4578)
JONES VARGAS
3773 Howard Hughes Parkway
Third Floor South
Las Vegas, NV 89169
Telephone:  (702) 862-3300

*Counsel for Lead Plaintiff City of Richmond Retirement System and the Class*

23

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Lead Plaintiff's Motion and Memorandum of Law for Preliminary Approval of Proposed Settlement, Preliminary Class Certification for Settlement Purposes, Approval of Form and Manner of Notice and Proof of Claim, and Setting of Final Fairness Hearing was served on February 17, 2010, via electronic service upon all persons registered to receive service through the Court's electronic filing system in this action.

Dated: February 17, 2010          s/ Megan D. McIntyre
                                      Megan D. McIntyre